[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12407

_____

MARIO DEL VALLE,
ENRIQUE FALLA,
ANGELO POU,

Plaintiffs-Appellants,

CAROLINA FERNANDEZ, et al.,

Plaintiffs,

*versus*

TRIVAGO GMBH,
a German Limited Liability Company,
BOOKING.COM B.V.,
a Dutch Limited Liability Company,
GRUPO HOTELERO CARIBE,
CORPORACION DE COMERCIO Y TURISMO

INTERNACIONAL CUBANACAN S.A.,
GRUPO DE TURISMO GAVIOTA S.A.,
RAUL DOE 1-5,
MARIELA ROE 1-5,
EXPEDIA, INC., et al.,

                                        Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-22619-RNS

————————————————

Before JORDAN and NEWSOM, Circuit Judges, and BURKE,* District Judge.

JORDAN, Circuit Judge:

On April 17, 2019, the Trump administration announced that it would not suspend the Cuban Liberty and Democratic Solidarity Act (known as the "Helms-Burton Act") for the first time since its enactment in 1996. Shortly after this announcement, the cause of action created by Title III of the Helms-Burton Act became

---

* The Honorable Liles Burke, U.S. District Judge for the Northern District of Alabama, sitting by designation.

fully effective in U.S. courts.  As explained in more detail below, Title III generally provides a private cause of action for United States nationals against persons who knowingly traffic in property expropriated by the Cuban government after the start of the Cuban revolution.

In this appeal we confront questions of personal jurisdiction and Article III standing in an action brought under Title III.  We conclude that, based on the uncontroverted allegations in the plaintiffs' complaint, the district court has specific jurisdiction over the defendants pursuant to Fla. Stat. § 48.193(1)(a)(2) and that the exercise of jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment.  We also conclude that the plaintiffs have standing to assert their Title III claims.

I

In January of 1959, Fidel Castro and the 26th of July Movement ousted dictator Fulgencio Batista and seized control of the Cuban government.  During the years that followed, the Cuban government nationalized all manner of property held by foreigners and Cuban nationals alike.

Congress enacted the Helms-Burton Act, 22 U.S.C. §§ 6021 *et seq.*, in 1996.  The goal was to deter trafficking of confiscated properties by providing "United States nationals who were the victims of th[o]se confiscations . . . with a judicial remedy in the courts of the United States."  § 6081(11).

Title III of the Helms-Burton Act establishes a private right of action for "any United States national who owns the claim to [confiscated property]" against "any person that . . . traffics in [such] property." § 6082(a)(1)(A). Until 2019, Title III was suspended by successive Presidential decrees. *See* § 6085 (allowing the President to suspend the effective date of Title III if suspension is "necessary to the national interests of the United States").

Under Title III, a person "traffics" in confiscated property if that person knowingly and intentionally

> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
>
> (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
>
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person,
>
> without the authorization of any United States national who holds a claim to the property.

§ 6023(13).

The plaintiffs in this case—Mario del Valle, Enrique Falla, and Angela Pou—filed suit in the Southern District of Florida under

Title III against several entities that own and operate travel websites, including Booking.com BV and Booking Holdings, Inc. (the Booking Entities), and Expedia Group, Inc., Hotels.com L.P., Hotels.com GP, and Orbitz, LLC (the Expedia Entities). The plaintiffs alleged that they are U.S. nationals and living heirs to separate beach-front properties nationalized by the Cuban government after the 1959 revolution. After seizing the properties, the Cuban government built the Starfish Cuatro Palmas and the Memories Jibacoa Resort (the Resorts) on the confiscated land. Until recently, visitors could reserve lodging at the Resorts through third-party travel booking websites. According to the complaint, the Booking Entities and Expedia Entities trafficked in those properties on their travel booking websites.

The Booking Entities and Expedia Entities moved to dismiss the complaint for lack of personal jurisdiction, lack of subject-matter jurisdiction, and failure to state a claim. Notably, they did not submit any affidavits or other exhibits rebutting the jurisdictional allegations in the complaint. The personal jurisdiction challenge, therefore, was facial and not factual.

The district court dismissed the plaintiffs' Title III claims without leave to amend, ruling that it lacked personal jurisdiction over the defendants under the relevant provisions of Florida's long-arm statute. *See* Fla. Stat. §§ 48.193(1)(a)(1), 48.193(1)(a)(2), 48.193(2). The district court did not reach the defendants' other grounds for dismissal.

Following a review of the record, and with the benefit of oral argument, we reverse. The plaintiffs alleged that the Booking Entities and Expedia Entities operate fully interactive travel websites that are accessible in Florida, and that Florida residents have used those websites to book accommodations at the Resorts. These allegations, which were not controverted below, establish personal jurisdiction. We also conclude that the plaintiffs have Article III standing for their Title III claims. [1]

## II

We exercise plenary review as to the district court's dismissal for lack of personal jurisdiction. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 1996). We accept the factual allegations in the complaint as true to the extent that they are uncontroverted and construe all reasonable inferences in the plaintiffs' favor. *See Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2009).

## A

Even in cases arising under federal law, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Baumann*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Under this paradigm, a federal court generally undertakes a two-step analysis to determine

---

[1] Because personal jurisdiction and standing are distinct from the merits, *see Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir. 2002), we express no view on the plaintiffs' Title III claims.

20-12407                Opinion of the Court                    7

whether there is personal jurisdiction over a nonresident defendant. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. *See id.* Second, if the court determines that the forum state's long-arm statute has been satisfied, it must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *See id.*

The operative complaint here set out the following allegations in support of the exercise of personal jurisdiction over the Booking Entities and Expedia Entities:

◆ The websites of the Booking Entities and Expedia Entities "are fully-interactive websites that have robust internet e-business capabilities. They have worldwide reach and are fully accessible in Florida."

◆ Florida residents could—*and did*—use the websites of the Booking Entities and Expedia Entities to book accommodations at the Resorts.

◆ The Booking Entities and Expedia Entities promote their websites and the ability to book lodgings at the Resorts on their websites through banner ads directed at Florida residents, follow-up emails sent to Florida residents who have searched for the Resorts or other geographically proximate hotels, and search engine optimization

(SEO) efforts intended to maximize performance on search engine results pages.

◆ In addition to the direct benefit of "receiving commissions or other fees for the booking" of the Resorts, the Booking Entities and Expedia Entities "also derive an indirect benefit" by "receiving advertising revenues driven by or related to" the web traffic generated through their offering of the ability to book lodging at the Resorts.

◆ "A substantial part" of the Booking Entities' and Expedia Entities' "business and revenue derives from their Florida offices."

D.E. 50 at ¶¶ 13, 15, 16, 39, 49-51, 58-59.

## B

With respect to the first step of the personal jurisdiction analysis, we begin (and end) with § 48.193(1)(a)(2) of Florida's long-arm statute. A specific jurisdiction provision, it provides that a non-resident defendant is subject to personal jurisdiction for any cause of action "arising from" a "tortious act" committed in Florida.[2]

We have consistently held that, under Florida law, a non-resident defendant commits a tortious act in Florida by performing an act outside the state that causes injury within Florida. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999);

---

[2] Given that there is specific personal jurisdiction under § 48.193(1)(a)(2), we need not address whether jurisdiction also exists under § 48.193(1)(a)(1) or § 48.193(2).

*Licciardello v. Lovelady*, 544 F.3d 1280, 1283-84 (11th Cir. 2008); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013). *See also Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1216 (Fla. 2010) (holding that a nonresident defendant commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute when its website containing defamatory statements is accessed in Florida). A nonresident defendant need not be physically present in Florida to commit a tortious act there. *See Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020); *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002).

In *Louis Vuitton*, we held that a nonresident defendant committed a tortious act in Florida under § 48.193(1)(a)(2) when he sold trademark-infringing goods to Florida residents through his website. *See* 736 F.3d at 1354. The district court here distinguished *Louis Vuitton* because "it involved a trademark infringement claim in which the infringement occurred through the website. In other words, *the use of the website constituted the claim itself.*" D.E. 71 at 5. The district court explained that the tort at the heart of the Helms-Burton Act claims against the Booking Entities and Expedia Entities is "traffick[ing] in . . . confiscated property, which occurred in Cuba." *Id.* We respectfully disagree, and conclude that *Louis Vuitton* is a closer fit than the district court thought.

*Louis Vuitton* did not rely solely on the website's *accessibility* in Florida as the basis for the exercise of specific personal jurisdiction, but also on the allegation that the defendant "caused injury in Florida . . . because [his] trademark infringing goods . . . were

sold to Florida customers through that website." *Louis Vuitton*, 736 F.3d at 1354. In other words, allegations regarding the sale of infringing goods to Florida residents *through the accessible website* sufficed to establish specific personal jurisdiction under § 48.193(1)(a)(2). *See id.* ("In sum, Mosseri's tortious acts on behalf of JEM Marketing caused injury in Florida and thus occurred there because Mosseri's trademark infringing goods were not only accessible on the website, but were sold to Florida residents through the website.").

Under Title III, a person traffics in confiscated property when he or she knowingly and intentionally engages in a commercial activity using or otherwise benefiting from the confiscated property. *See* 22 U.S.C. § 6023(13). As the plaintiffs alleged in their complaint, the trafficking underlying the Helms-Burton Act claims against the Booking Entities and Expedia Entities involves Florida residents using their commercial websites to book lodging at the Resorts that now stand on the confiscated properties. The complaint alleged that the Booking Entities and Expedia Entities derived a benefit from the unauthorized use of the confiscated properties (i.e., the trafficking) because they (a) "received commissions or other fees for the booking" of lodging at the Resorts via their websites, and (b) "also derive[d] an indirect benefit" by "receiving advertising revenues driven by or related to" the web traffic generated through their offering of the Resorts on their websites. Put another way, the plaintiffs alleged that the Booking Entities and Expedia Entities trafficked in the confiscated properties by

specifically targeting and "selling" reservations at the Resorts *to Florida residents through their websites*. As a result, *Louis Vuitton* is factually and legally analogous and supports a finding of specific personal jurisdiction under § 48.193(1)(a)(2).

The Florida Supreme Court's decision in *Internet Solutions* supports our conclusion. That case held that a nonresident defendant commits a tortious act in Florida under § 48.193(1)(a)(2) when he "post[s] [allegedly defamatory] statements on a website, provided that the website posts containing the statements are accessible in Florida and *accessed in Florida*." 39 So. 3d at 1215 (emphasis added). Once defamatory material is "accessed by a third party in Florida, the material has been 'published' in Florida and the poster has communicated the material 'into' Florida, thereby committing the tortious act of defamation within Florida." *Id.*

The same principle applies here. The Booking Entities and Expedia Entities allegedly trafficked in the confiscated properties by profiting from web traffic generated by Florida residents' interest in the Resorts *and* from reservations made by Florida residents at the Resorts through their commercial websites—commercial activities using or otherwise benefiting from the confiscated properties. At the very least, some of the alleged trafficking took place when Florida residents accessed the websites and made reservations at one or more of the Resorts through those websites. It is the Florida residents' booking of accommodations at the Resorts through the websites—the material communicated "into" Florida—that gives rise to the plaintiffs' trafficking claims under Title

III and provides for specific personal jurisdiction under § 48.193(1)(a)(2). *See Internet Solutions Corp.*, 39 So.3d at 1215. *See also Wendt*, 822 So.2d at 1260 ("'[C]ommitting a tortious act in Florida' . . . can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida."); *Rennaissance Health Pub., LLC v. Resveratol Partners, LLC*, 982 So. 2d 739, 742 (Fla. 4th DCA 2008) ("An interactive website which allows a defendant to enter into contracts to sell products to Florida residents, and which 'involve[s] the knowing and repeated transmission of computer files over the internet,' may support a finding of personal jurisdiction.").

## C

As explained above, the complaint's allegations satisfied the requirements for specific jurisdiction pursuant to § 48.193(1)(a)(2). Because the Booking Entities and Expedia Entities did not rebut those allegations, we next consider whether the exercise of personal jurisdiction comports with the Constitution. *See United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

The Due Process Clause of the Fourteenth Amendment protects a party from being subject to the binding judgment of a forum with which it has established no meaningful "contacts, ties, or relations." *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). A tribunal's authority depends on the defendant having such contacts with the forum that "'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial

justice.'" *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021) (quoting *International Shoe*, 326 U.S. at 316-17). "The law of specific jurisdiction . . . seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Ford Motor Co.*, 141 S. Ct. at 1025. [3]

At bottom, due process prohibits the exercise of personal jurisdiction over a nonresident defendant unless its contacts with the state are such that it has fair warning that it may be subject to suit there. *See id.*; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–

---

[3] Because the parties have litigated the personal jurisdiction issue under the Fourteenth Amendment, we do not address the Fifth Amendment's Due Process Clause or Federal Rule of Civil Procedure 4(k)(2)(A)-(B), which provides that, where a claim "arises under federal law" and the defendant is not subject to jurisdiction in the courts of general jurisdiction of any state, a federal court may exercise personal jurisdiction if it "is consistent with the United States Constitution and laws." *Compare Bristol Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1783-84 (2017) ("[S]ince our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."), *with Oldfield v. Pueblo Bahia Lora, S.A.*, 558 F.3d 1200, 1219 n.25 (11th Cir. 2009) ("As the language and policy of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical, decisions interpreting the Fourteenth Amendment's Due Process Clause guide us in determining what due process requires in the Fifth Amendment jurisdictional context."). In any event, we recently held in a Helms-Burton Act case that courts should analyze personal jurisdiction under the Fifth Amendment using the same basic principles that apply under the Fourteenth Amendment. *See Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1308 (11th Cir. 2022).

77 (1985).  In specific jurisdiction cases like this one, we examine whether (1) the plaintiff's claims "arise out of or relate to" one of the defendant's contacts with the forum state; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of "fair play and substantial justice." *See Louis Vuitton*, 736 F.3d at 1355.  The plaintiffs bear the burden of establishing the first two requirements. *See id.*  If they carry that burden, the Booking Entities and Expedia Entities must then make a "'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

The first prong—which addresses the concept of relatedness—focuses on the "causal relationship between the defendant, the forum, and the litigation." *Fraser*, 594 F.3d at 850 (internal quotation marks omitted).  Importantly, the Supreme Court recently rejected the contention that specific jurisdiction may attach only when the defendant's forum conduct directly gave rise to the plaintiff's claims. *See Ford Motor Co.*, 141 S. Ct. at 1026-27 ("[W]e have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct.").

This prong is readily met here.  Though direct causation is not required, the plaintiffs' Helms-Burton Act claims arise at least in part directly out of the contacts of the Booking Entities and the

Expedia Entities with Florida—the promotion targeted at and directed to Florida residents, the accessing of their websites by Florida residents, and the use of those websites by some Florida residents to book accommodations at the Resorts.  To borrow the language of *Louis Vuitton*, the ties of the Booking Entities and Expedia Entities "to Florida . . . involve the advertising [and] selling" of accommodations at the Resorts to Florida residents.  736 F.3d at 1356.

As to the second prong—which concerns purposeful availment—there are two applicable tests: the effects test and the minimum contacts test. *See Calder v. Jones*, 465 U.S. 783, 790 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984).  We discuss both below.

Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment without regard to whether the defendant had any other contacts with the forum state.  *See Lovelady*, 544 F.3d at 1285.  The test is met when the tort was intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state. *See id.* at 1285–86, 1287–88.  In *Lovelady*, for example, we held that the defendant's use of the Florida plaintiff's trademarked name and picture on a website accessible in Florida satisfied the effects test for personal jurisdiction because it entailed "the commission of an intentional tort aimed at a specific individual in the forum whose effects were suffered in the forum." *Id.* at 1288.

The minimum contacts test assesses the nonresident defendant's contacts with the forum state and asks whether those contacts (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *See Louis Vuitton*, 736 F.3d at 1357. In performing the minimum contacts analysis, we identify all contacts between the nonresident defendant and the forum state and ask whether, individually or collectively, those contacts satisfy the relevant criteria. *See id.* As noted earlier, the nonresident's contact with the forum need not give rise to the plaintiff's claim. *See Ford Motor Co.*, 141 S. Ct. at 1026-27.

We held in *Louis Vuitton*, 736 F.3d at 1357-58, that a nonresident defendant was subject to jurisdiction in Florida in accordance with due process under both the effects test and the minimum contacts test. As explained earlier, the defendant in that case had "purposefully solicited business from Florida residents through the use of at least one, fully interactive website" and had sold allegedly infringing goods to Florida residents through that website. *See id.*

Given the allegations in the plaintiffs' complaint, we similarly conclude here that both the effects test and the minimum contacts test are satisfied. As a result, we do not have to choose one test over the other with respect to purposeful availment.

First, the Florida contacts of the Booking Entities and Expedia entities are sufficiently related to the plaintiffs' claims.

Although direct causation between the nonresident's forum contacts and the plaintiff's cause of action is not required, *see Ford Motor Co.*, 141 S. Ct. at 1026-27, the relevant claims here—alleged trafficking in confiscated properties under Title III of the Helms-Burton Act—are based in part on those contacts (i.e., the booking of accommodations at the Resorts by Florida residents on the defendants' interactive commercial websites). What is more, the effects of the intentional conduct of the Booking Entities and Expedia Entities were felt in Florida, where all three plaintiffs reside.

Second, the Booking Entities and Expedia Entities purposefully availed themselves of Florida in such a way that they could reasonably foresee being haled into court there. As in *Louis Vuitton*, 736 F.3d at 1357-58, this is not a case of a nonresident defendant merely operating an interactive website that is accessible in Florida. As alleged by the plaintiffs, the Booking Entities and Expedia Entities promoted their websites and the ability to book lodging at the Resorts on their websites through banner ads directed at Florida residents, follow-up direct emails sent to Florida residents who searched for the Resorts or other geographically proximate hotels, and SEO efforts intended to maximize performance on search engine results pages to purposefully solicit business from Florida residents. And, as a result of those efforts, they secured a direct financial benefit from bookings made by Florida residents at the Resorts and indirect commercial gain from the web traffic generated from Florida residents by virtue of listing the Resorts on their websites.

These contacts, taken collectively, establish that the Booking Entities and Expedia Entities purposefully availed themselves of the privileges of doing business in Florida and could reasonably foresee being sued there. We note, as well, that according to the complaint a substantial part of the business and revenue of the Booking Entities and Expedia Entities derives from their Florida offices. *See id.* at 1358 ("[P]urposeful availment for due process was shown here because, in addition to his fully interactive website . . . accessible in Florida, Mosseri had other contacts with Florida—through selling and distributing infringing goods through his website to Florida consumers and the cause of action here derives directly from those contacts.") (emphasis deleted). *See also Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 399-401 (7th Cir. 2020) (defendant's operation of interactive commercial website accessible in Illinois, plus sales of infringing products to and communications with Illinois residents, established minimum contacts for purposes of due process); Thomas A. Dickerson et al., *Personal Jurisdiction and the Marketing of Goods and Services on the Internet*, 41 Hofstra L. Rev. 31, 49 (2012) ("[T]he highest level of travel website interactivity, involving the purchase of travel services on the website together with other business contacts with the forum, would provide a sufficient [constitutional] basis for jurisdiction.").

That leaves the "fair play and substantial justice" prong, which considers (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial

system's interest in resolving the dispute." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The Booking Entities and Expedia Entities, which have the burden on this prong, have not argued that they would be burdened by having to litigate the case in Florida, much less offered any evidence to that effect. The other factors, moreover, support the exercise of personal jurisdiction. Florida has a strong interest in adjudicating this dispute given that Florida residents allegedly used the websites of the Booking Entities and Expedia Entities to make reservations at the Resorts. And the plaintiffs, as Florida residents, have an interest in litigating this case in their chosen home forum. Florida has "significant interests at stake," including "'providing [its] residents with a convenient forum for redressing injuries inflicted by out-of-state actors[.]'" *Ford Motor Co.*, 141 S. Ct. at 1030 (quoting *Burger King*, 471 U.S. at 473).

## IV

The Booking Entities and Expedia Entities also assert that we lack subject-matter jurisdiction over this case because the plaintiffs do not have Article III standing to bring their Title III claims. In essence, they argue that the plaintiffs cannot allege injury-in-fact; even if the Booking Entities and Expedia Entities never trafficked in the properties, the properties would still have been confiscated by the Cuban government and the plaintiffs' positions would be unchanged. They further argue that any injury is not traceable to them because they did not confiscate the plaintiffs' properties and do not operate the hotels. As we explain in more detail in *Garcia-*

*Bengochea v. Carnival Corp.*, Nos. 20-12960 & 20-14251, ___ F.4th ___ (11th Cir. 2022), this lack-of-standing theory fails.

A plaintiff has Article III standing if he suffered an injury in fact that can be fairly traced to the defendant's conduct and that can be redressed with a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Like the plaintiff in *Garcia-Bengochea*, the plaintiffs in this case must allege sufficient facts to plausibly state these three elements. *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1621 (2020).

Our review of standing is plenary. *See, e.g.*, *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021). And when addressing standing, we must assume that the plaintiffs would be successful on the merits of their Title III claims. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975); *Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 994 (11th Cir. 2016).

As we note in *Garcia-Bengochea*, all the courts that have tackled this question have concluded that similarly-situated plaintiffs have Article III standing to bring a claim under Title III. *See, e.g., Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 334–36 (5th Cir. 2021); *Glen v. Trip Advisor LLC*, 529 F.Supp.3d 316, 326–28 (D. Del. 2021), *aff'd,* 2022 WL 3538221, at *2 (3d Cir. August 18, 2022); *de Fernandez v. Crowley Holdings, Inc.*, No. 21-CV-20443, 2022 WL 860373, at *3–*4 (S.D. Fla. Mar. 23, 2022); *Exxon Mobil Corp. v. Corporación CIMEX S.A.*, 534 F.Supp.3d 1, 30–32 (D.D.C. 2021); *Sucesores de Don Carlos Nuñez y Doña Pura Galvez, Inc. v. Société Générale, S.A.*, 577 F.Supp.3d 295, 307–10 (S.D.N.Y. Dec. 22,

2021); *Moreira v. Société Générale, S.A.*, 573 F.Supp.3d 921, 925–29 (S.D.N.Y. Nov. 24, 2021); *N. Am. Sugar Indus. Inc. v. Xinjiang Goldwind Sci. & Tech. Co.,* No. 20-CV-22471 (DPG), 2021 WL 3741647, at *3–*6 (S.D. Fla. Aug. 24, 2021); *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F.Supp.3d 1215, 1226–31 (S.D. Fla. 2020); *Havana Docks Corp. v. MSC Cruises SA Co.,* 484 F. Supp. 3d 1177, 1190–95 (S.D. Fla. 2020); *Havana Docks Corp. v. Carnival Corp.,* No. 19-CV-21724 (BB), 2020 WL 5517590, at *6–*11 (S.D. Fla. Sept. 14, 2020).  We agree with this unanimous perspective.

The Fifth Circuit's decision in *Glen*, 7 F.4th at 334–36, is an especially apt comparator for the plaintiffs here.  Like our plaintiffs, Mr. Glen alleged that his family owned beachfront properties in Varadero that were confiscated by the Castro regime.  *See id.* at 333.  Mr. Glen filed suit against American Airlines, alleging that it engaged in trafficking by operating a website through which travelers reserved lodging at hotels built on his family's former properties.  *See id.* at 334.  On appeal, the Fifth Circuit held that Mr. Glen had Article III standing to bring his Title III claim because he adequately alleged a concrete injury that bore a close relationship to a harm with "common law roots" (unjust enrichment) that was traceable to American Airlines.  *See id.* at 334–36.  As to traceability, the Fifth Circuit found a "direct 'causal link between [Mr. Glen's] injury from the Cuban Government's expropriation of [his family's] property and [the] subsequent trafficker's unjust enrichment

from . . . use of that confiscated property.'" *Id.* at 336 (quoting *Havana Docks Corp.*, 484 F. Supp. 3d at 1227).

Like Mr. Glen, the plaintiffs here have alleged that they were harmed when the websites operated by the Booking Entities and Expedia Entities were used to book lodging at hotels built on their families' confiscated properties. *See Glen*, 7 F.4th at 333. The plaintiffs characterize the alleged trafficking as "exploit[ing] and benefit[ing] from [their] properties without paying the rightful owners any compensation what[so]ever"—an injury tantamount to unjust enrichment. *See* D.E. 50 at 3. Like the Fifth Circuit in *Glen*, we hold that the plaintiffs have adequately alleged that they suffered a concrete injury because the Booking Entities and Expedia Entities were unjustly enriched by the use of their confiscated properties. *See Glen*, 7 F.4th at 334.

Regarding traceability, Mr. Glen and our plaintiffs remain in the same proverbial boat. *See id.* at 335–36. Like Mr. Glen, the plaintiffs' alleged injuries are traceable to the Booking Entities and Expedia Entities because they were unjustly enriched through business arrangements they made with the hotels built on the plaintiffs' confiscated properties. *See id.* at 336. The Booking Entities and Expedia Entities have not received authorization from the plaintiffs to engage in those arrangements, nor have they compensated the plaintiffs for the benefits they've reaped. As a result, the Booking Entities and Expedia Entities caused a new injury separate from the Cuban government's initial wrongful confiscation of the plaintiffs' properties. And that harm is certainly traceable to the Booking

Entities and Expedia Entities themselves. *See Havana Docks*, 484 F. Supp. 3d at 1230.

The Booking Entities and Expedia Entities fare no better on redressability, the final prong of the standing analysis. *See Lujan*, 504 U.S. at 561 (holding that a plaintiff must show that it is "likely as opposed to merely speculative, that the injury will be redressed by a favorable decision") (internal quotations omitted). The plaintiffs have alleged that the Booking Entities and Expedia Entities caused them a financial injury by trafficking in their properties without their permission and without compensation. That, it goes without saying, is an injury which the award of damages under Title III will redress. *See, e.g., Trip Advisor*, 529 F.Supp.3d at 328 ("Glen's alleged injury can be redressed by a favorable judgment. A favorable judgment would entitle Glen to money damages as specified in the Helms-Burton Act . . ., compensation that would redress the harm [he] allegedly suffered from Defendants' economic exploitation of the Subject Properties.")

In sum, we conclude that the plaintiffs have sufficiently alleged each of the requirements of Article III standing.

## V

Based on the uncontroverted allegations in the complaint, the district court has specific personal jurisdiction over the Booking Entities and Expedia Entities pursuant to Fla. Stat. § 48.193(1)(a)(2), and the exercise of such jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment. The plaintiffs also have

plausibly alleged Article III standing.  We therefore reverse the district court's dismissal of the plaintiffs' complaint and remand for further proceedings.

REVERSED AND REMANDED.