[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11725

Non-Argument Calendar

_____

DAVID MCCALL,
TATYANA ALESHONKOVA,

                                        Plaintiffs-Appellants,

versus

ANGELA ZOTOS,
AMAZON.COM, INC.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-02411-SDM-TGW

_____

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

David McCall and Tatyana Aleshonkova appeal the district court's order dismissing their *pro se* defamation complaint against Angela Zotos and Amazon.com.  The district court determined that it lacked personal jurisdiction over Ms. Zotos and that Amazon was immune under the Communications Decency Act, 47 U.S.C. § 230(c)(1), (e).  Because we agree with the district court on both counts, we affirm.[1]

I

As background, Mr. McCall and Ms. Aleshonkova sold a scarf to Ms. Zotos through their storefront on Amazon called the Wrap Shop.  Dissatisfied with the scarf, Ms. Zotos left the following review on Amazon:

> This is not authentic Burberry.  I have several Burberry scarfs and the tags on this are fake.  I will be using my own return process.

---

[1] Mr. McCall and Ms. Aleshonkova also argue that they are entitled to a default judgment against Amazon for its failure to obey a district court order, requiring it to file an amended motion to dismiss that complied with a local rule.  *See* D.E. 14.  This argument is meritless.  Amazon complied with the district court's order by timely filing an amended motion to dismiss.  *See* D.E. 16.

Mr. McCall and Ms. Aleshonkova asked Amazon and Ms. Zotos to remove the review.  As part of their campaign to get the review removed, they provided Amazon, at its request, with evidence of the scarf's authenticity. Neither Amazon nor Ms. Zotos, however, agreed to take down the review.

Mr. McCall and Ms. Aleshonkova are residents of Florida, and Ms. Zotos lives in Illinois.  Robert Godfrey, a friend of the plaintiffs who lives in Florida, stated in a declaration that he accessed Ms. Zotos' review in the summer of 2021.

## II

We review *de novo* a dismissal for failure to state a claim upon which relief may be granted, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009).  We liberally construe *pro se* filings. *Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020). We review the dismissal of an action for lack of personal jurisdiction *de novo*, but review underlying findings of fact for clear error. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

## III

Mr. McCall and Ms. Aleshonkova appeal the district court's conclusion that the Communications Decency Act bars their claims against Amazon.  According to them, the CDA's broad immunity for interactive computer service providers does not apply

to Amazon because Amazon helped develop the defamatory posting. We disagree and hold that the CDA bars the defamation claim against Amazon.

## A

Under the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA preempts state law that is contrary to this subsection. *See* 47 U.S.C. § 230(e) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section").

We have recognized that "[t]he majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with third party user of the service." *Almeida v. Amazon*, 456 F.3d 1316, 1321 (11th Cir. 2006) (internal citation and quotation marks omitted) (discussing CDA immunity but not reaching the question of whether it applied). Generally speaking, § 230 "precludes courts from entertaining claims that would place a computer service provider in a publisher's role." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 2008).

The purpose of this statutory immunity is to "maintain the robust nature of Internet communication" and to avoid the "obvious chilling effect" that would result from the specter of tort liability on service providers for millions of postings by third parties. *Id.*

(citing 47 U.S.C. § 230(b)).  Congress also enacted the CDA "to remove the disincentives to selfregulation" created by *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710 (N.Y. May 24, 1995), in which a New York trial court held that a computer service provider that regulated the dissemination of offensive material on its service risked subjecting itself to liability for the material because "the regulation cast the service provider in the role of a publisher." *Zeran*, 129 F.3d at 331 (citing *Stratton Oakmont*, 1995 WL 323710, at ⋆3–5); *Force v. Facebook, Inc.*, 934 F.3d 53, 63–64 (2d Cir. 2019) (one of § 230's "objectives" was "[t]o overrule *Stratton*"); *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016) ("§ 230 was in part a reaction to *Stratton* . . . a New York state decision holding that an internet service provider became a publisher of offensive content on its message boards because it deleted some offensive posts but not others"); *NetChoice, LLC v. Paxton*, 49 4th 439, 466 (5th Cir. 2022) ("Congress disagreed with *Stratton Oakmont* and abrogated it by enacting § 230"). *See also* S. Conf. Rep. 104–230, at ⋆194 (1996) ("One of the specific purposes of [the CDA] is to overrule *Stratton-Oakmont v. Prodigy* and any other similar decisions").

## B

As noted above, § 230 immunity only applies to interactive computer services.  According to the CDA, an "interactive computer service" means "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]"  47 U.S.C. § 230(f)(2).

Courts typically have held that website exchange systems and online message boards are interactive computer services. *See, e.g., Lawyers' Comm. For Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (applying interactive computer service definition to Craigslist); *Universal Commc'ns Sys. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) (applying definition to internet message board operator). Amazon is an interactive computer service provider. Amazon's website allows customers to view, purchase, and post reviews online, and therefore provides computer access by multiple users similar to an online message board or a website exchange system.

The CDA also requires the claim to be based on content provided by *another* information content provider. It defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). This definition "cover[s] even those who are responsible for the development of content only in part." *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1197 (10th Cir. 2009) (internal citation and quotation marks omitted). There may be several information content providers of a single piece of content, each responsible for its creation or development in part. *See id.* If the claim is based on content that the interactive computer service developed, even if only in part, then the service could be held liable. *See FTC v. LeakClick Media, LLC*, 838 F.3d 158, 174

(2d Cir. 2016). In other words, Amazon can be held liable for defamatory content if it was responsible for the development of that content in part.

According to the complaint, Ms. Zotos wrote the allegedly defamatory review, and therefore she functioned as the information content provider. *See* D.E. 1 at 5. Mr. McCall and Ms. Aleshonkova do not dispute this, but argue that Amazon also functioned as an information content provider because it set rules governing customer feedback. As support for this argument, Mr. McCall and Ms. Aleshonkova cite to *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008), in which Roommates.com was held liable for discriminatory content it partly developed.

In that case, Roommates.com published a profile page for each subscriber seeking housing on its website. *See id.* at 1165. Each profile had drop-down menu on which subscribers seeking housing had to specify whether there are currently straight males, gay males, straight females, or lesbians living at the dwelling. This information was then displayed on the website, and Roommates.com used this information to channel subscribers away from the listings that were not compatible with the subscriber's preferences. *See id.* The Ninth Circuit determined that Roommates.com was an information content provider (along with the subscribers seeking housing on the website) because it helped develop the information at least in part. *Id.* ("By requiring subscribers to provide the information as a condition of accessing its service, and by

providing a limited set of prepopulated answers, Roommate[s.com] . . . becomes the developer, at least in part, of that information.").

*Roommates.com* is not applicable, as the complaint here alleges that Ms. Zotos wrote the review in its entirety. *See generally* D.E. 1. Amazon did not create or develop the defamatory review even in part—unlike Roommates.com, which curated the allegedly discriminatory dropdown options and required the subscribers to choose one. There are no allegations that suggest Amazon helped develop the allegedly defamatory review.

The plaintiffs seek to hold Amazon liable for failing to take down Ms. Zotos' review, which is exactly the kind of claim that is immunized by the CDA—one that treats Amazon as the publisher of that information. *See* 47 U.S.C. § 230(c)(1). *See also* D.E. 1 at 5 ("Amazon . . . refused to remove the libelous statements posted by Defendant Zotos"). "Lawsuits seeking to hold a service provider [like Amazon] liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred." *Zeran*, 129 F.3d at 330. We therefore affirm the dismissal of the claims against Amazon.

## IV

To exert personal jurisdiction over a nonresident defendant, both prongs of a two-prong inquiry must be satisfied: (1) there must be a basis for asserting personal jurisdiction under the forum-state's long-arm statute; and (2) sufficient minimum contacts

must exist to satisfy the Due Process Clause, such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (internal citation and quotation marks omitted).

The first prong is satisfied. Florida's long-arm statute provides that persons submit themselves to jurisdiction in Florida for suits arising out of the commission of "a tortious act" in Florida. *See* Fla. Stat. § 48.193(1)(a)(2). The Eleventh Circuit has concluded, after certifying the question to the Florida Supreme Court, that the posting of defamatory material about a Florida resident "that was both accessible in Florida and accessed in Florida constituted the commission of a tortious act of defamation within Florida." *Internet Solutions Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) (citing *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1216 n.11 (Fla. 2010)). Here, the district court correctly determined that the first prong was satisfied because the review was accessible in Florida and, according to his declaration, Mr. Godrey accessed the review in Florida. *See* D.E. 38–1.

The second, "more restrictive" prong is next. *See Internet Solutions*, 611 F.3d at 1371 n.1 (remanding for the district court to consider the "more restrictive" step of whether the exercise of jurisdiction would violate due process). In specific personal jurisdiction cases like this one, we apply a three-part due process test: "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the non-resident defendant 'purposefully availed' himself of the privilege of

conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier*, 736 F.3d at 1355 (citations omitted). The plaintiff bears the burden of establishing the first two requirements, and if the plaintiff does so, the "defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* at 1355 (internal quotation marks and citation omitted).

Mr. McCall's and Ms. Aleshonkova's claim arose out of the review that Ms. Zotos posted, which was her contact with Florida. The first requirement is therefore met. *See Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) ("our inquiry must focus on the direct causal relationship among the defendant, the forum, and the litigation").

Next, we look at whether Ms. Zotos "purposefully availed" herself of "the privilege of conducting activities" within Florida, thus "invoking the benefit" provided by Florida's laws. *See Louis Vuitton*, 736 F.3d at 1355. In intentional tort cases like this one courts may apply the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984), in lieu of or in addition to the traditional minimum contacts test to determine whether the defendant purposefully availed herself of the forum. *See Louis Vuitton*, 736 F.3d at 1356. The test is met when the tort was intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state. *See id.*

In *Calder*, for example, an allegedly libelous magazine article concerned the activities of a California resident—an entertainer—in California. The article impugned the professionalism of the entertainer, whose career was centered in California. *See* 465 U.S. at 788–789. The article was drawn from California sources, and the brunt of the harm, in terms of both the entertainer's emotional distress and the injury to her professional reputation as an actress, was suffered in California. *See id.* The entertainer sued those responsible for the article in California, and the Supreme Court held that due process permitted a California court to exercise personal jurisdiction over the defendants, who were based in Florida. It explained that the defendants could reasonably expect to be haled into court in California because their article was directed at a California resident and they knew the brunt of the injury would be felt in California. *See id.* at 788–90.

The circumstances are different here. Ms. Zotos wrote the allegedly defamatory review while in Illinois about a scarf she ordered on Amazon. Unlike the entertainer in *Calder*, whose reputation was harmed in the California-based entertainment industry, the alleged harm here was felt across the United States, as buyers from all 50 states can read the review on Amazon (and decide not to purchase items from Mr. McCall and Ms. Aleshonkova based on the review). *See id.* at 789.

Posting information on the internet "is not sufficient by itself to subject[ ] that person to personal jurisdiction in each State in

which the information is accessed." *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002). Otherwise, a "person placing information on the Internet would be subject to personal jurisdiction in every State[.]" *Id.* "Something more than posting [online] and accessibility" from the forum is required—Ms. Zotos must, through her internet posting, "manifest an intent to target and focus on [Florida] readers." *Id. See also Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011) (for personal jurisdiction in the internet context, "the internet user [must] intentionally direct[ ] his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there"); *Johnson v. Arden*, 614 F.3d 785, 797–98 (8th Cir. 2010) (holding that Missouri court lacked personal jurisdiction over a nonresident defendant who posted about Missouri residents because the website did not "specifically target" Missouri); *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) (holding that a Texas court lacked personal jurisdiction over a nonresident defendant because the article "contains no reference to Texas, nor does it refer to the Texas activities of [the plaintiff], and it was not directed at Texas readers as distinguished from readers in other states.").

"Although the place that the plaintiff feels the alleged injury" occurred is relevant to the jurisdictional inquiry, "it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld." *Young*, 315 F.3d at 262. The mere fact that Ms. Zotos knew that the plaintiffs resided in Florida is not sufficient to show that Florida

was targeted as the focal point of the statements. *See id.* at 264 (quoting *Griffis v. Luban*, 646 N.W.2d 527, 536 (Minn. 2002) ("that [the defendant, who posted allegedly defamatory statements about the plaintiff on the Internet] knew that [the plaintiff] resided and worked in Alabama is not sufficient to extend personal jurisdiction over [the defendant] in Alabama, because that knowledge does not demonstrate targeting of Alabama as the focal point of the statements")).

There are no allegations that Ms. Zotos targeted Florida readers. Ms. Zotos posted the review on Amazon, which was accessible in all 50 states. The allegations that the review was accessible and accessed in Florida and that Mr. McCall and Ms. Aleshonkova resided in Florida are not sufficient to confer personal jurisdiction over Ms. Zotos.[2]

## V

We affirm the district court's order granting Amazon's motion to dismiss with prejudice and granting Ms. Zotos' motion to dismiss without prejudice.

**AFFIRMED.**

---

[2] This is not a case like *Louis Vuitton*, 736 F.3d at 1357–58 or *Del Valle v. Trivago*, 56 F.4th 1265, 1276–77 (11th Cir. 2022), where the defendants solicited business from Florida residents on a website and then sold products or services to those residents.