[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11062

Non-Argument Calendar

_____

MICRO FINANCE ADVISORS, INC.,
a Florida corporation,

Plaintiff-Appellant,

*versus*

CLAUDIO MATUS COLOUMB,
an individual residing in Guatemala,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:21-cv-22303-JLK

_____

Before JORDAN, BRANCH, and ABUDU, Circuit Judges.

PER CURIAM:

Micro Finance Advisors, Inc. appeals the dismissal of its amended complaint for lack of personal jurisdiction over the sole defendant, Claudio Matus Coloumb. After review of the parties' briefs and the record, we affirm in part, vacate in part, and remand in part.

**I**

**A**[1]

Micro is a Florida corporation that "provides financial management" for several companies ("Related Companies") in Latin America, including Banco Solidario, Sociedad Anonima, in Ecuador ("Banco Solidario"), and Banco de Antigua, Sociedad Anonima, in Guatemala ("Banco de Antigua"). On behalf of the Related Companies, Micro may (1) authorize payments, (2) negotiate agreements, and (3) hire and fire top level executives. Fernando Bueno, who will soon become relevant, is vice President of Micro and operates out of its headquarters in Miami, Florida. Mr. Bueno is also chairman of the board of directors of Banco de Antigua,

---

[1] The facts herein are taken from Micro's amended complaint and its attachments.

although he does not have any day-to-day responsibilities for the institution.

Prior to 2014, Mr. Matus served as general manager and commercial vice president to a predecessor of Banco Solidario in Ecuador. In 2014, he moved to Guatemala to serve as the vice president of sales and vice-chairman of the board of directors for Banco de Antigua. Mr. Matus is a citizen of Chile.

In March of 2016, Micro decided to fire Mr. Matus from Banco de Antigua. Mr. Matus in turn requested to negotiate his severance with Mr. Bueno. Mr. Bueno negotiated on behalf of Micro, Banco de Antigua, and other Related Companies. At all times relevant, Mr. Matus was aware of Mr. Bueno's whereabouts and his responsibilities at Micro and Banco de Antigua. The two exchanged several calls and emails, with Mr. Matus in Guatemala and Mr. Bueno in Florida. In one such email, Mr. Matus told Mr. Bueno that he was "willing to give up an important part of my income . . . and thus close tightly this chapter of my professional life."

The parties reached an agreement in April of 2016. Micro paid Mr. Matus $200,000 by depositing the money in his Panamanian bank account, as requested by Mr. Matus. Micro transferred the money from its Bank of America account in the United States, which it had previously used to pay Mr. Matus bonuses. In addition, Banco Solidario signed over a life insurance policy, allowing Mr. Matus to collect over $100,000 in surrender value; Banco de Antigua paid Mr. Matus $58,000; and Banco de Antigua continued to cover Mr. Matus' rent and private security for some time. In

exchange, Mr. Matus agreed to release Micro and Banco de Antigua (and the other Related Companies) of any further liability.

In May of 2018, Mr. Matus filed a civil suit against Banco de Antigua and Micro in Guatemala seeking damages related to his termination. The next month, Mr. Matus filed a "criminal action" against Mr. Bueno and an officer of Banco de Antigua in Guatemala, accusing Mr. Bueno of the Guatemalan equivalents to fraud, conversion, and unjust enrichment.

**B**

Micro sued Mr. Matus in Florida state court in March of 2020, alleging fraudulent misrepresentation, breach of contract, negligent misrepresentation, and unjust enrichment. The crux of Micro's lawsuit is that Mr. Matus never truly intended on abiding by the settlement agreement and thus obtained it by fraud.

Mr. Matus removed the case to the Southern District of Florida three months later and shortly thereafter moved to dismiss for lack of personal jurisdiction or, in the alternative, *forum non conveniens*. In October of 2021, the district court granted the motion to dismiss on personal jurisdiction grounds ("October Order").

In its October Order, the district court reasoned that Mr. Matus was subject to personal jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193.(1)(a)(2), for allegedly committing a tortious act within Florida (*i.e.*, sending and making allegedly fraudulent emails and calls into Florida). The district court held, however, that the exercise of personal jurisdiction would not comport with

due process because Micro was the "only link between the defendant and the forum . . . . " D.E. 14 at 7 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Mainly, the district court reasoned that Micro sending money from the United States and Mr. Bueno being in Miami were all of Micro's choosing. The district court found the effects test inapt because of Mr. Bueno's double role as chairman of the board of directors of Banco de Antigua. The district court did not give weight to a 2014 trip by Mr. Matus to Florida because it was too far removed from and unrelated to Micro's claims.

In December of 2021, the district court reconsidered its October Order based on Mr. Bueno's representation that Mr. Matus specifically requested to be paid the settlement money *from* Micro's Florida bank account to his account in Panama. In response, Mr. Matus moved the district court to again reconsider its exercise of personal jurisdiction following an evidentiary hearing. The district court agreed and referred the matter to a magistrate judge.

In June of 2022, the magistrate judge held an evidentiary hearing at which Mr. Matus and Mr. Bueno testified. magistrate judge limited her review to whether Mr. Matus requested to be paid the settlement money from Micro's Florida bank account. Although the magistrate judge found both witnesses to be credible, she concluded that "although Mr. Bueno had a basis to believe that [Mr. Matus] wanted him to use the Bank of America account, that impression was not created by any direction or statement that was made by [Mr. Matus]. Rather, he drew that conclusion because he

knew that the previous payments to [Mr. Matus] made to his Panamanian account came from Bank of America." D.E. 46 at 12. The magistrate judge further explained that "[a]lthough [Mr. Matus] knew that [Micro] was in Florida, there is nothing in the record to support the allegation that he directed that a Florida or American bank pay his settlement." *Id*. at 13.

On that basis, the magistrate judge recommended that Mr. Matus' motion for reconsideration be granted and that the district court dismiss the case for lack of personal jurisdiction. In doing so, the magistrate judge noted that "[Micro], of course, is free to amend the complaint . . . . " *Id*. at 14. Micro failed to object to the magistrate's report and recommendation. In August of 2022, the district court adopted the report, dismissed the case without prejudice for lack of personal jurisdiction, and closed the case. That same day, Micro moved to have the district court reopen the case and allow it to file an amended complaint within ten days. district court granted Micro's motion.

On August 19, 2022, Micro filed its amended complaint—the complaint at issue in this appeal. Mr. Matus again moved to dismiss the amended complaint for lack of personal jurisdiction. The district court dismissed the case *with* prejudice because the amended complaint did not add anything new.

## II

We review de novo a dismissal for lack of personal jurisdiction. *See SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023). Factual allegations in the complaint are accepted as true to

23-11062                Opinion of the Court                7

the extent that they are uncontroverted and all reasonable inferences are construed in the plaintiff's favor. *See Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2009).

Under Eleventh Circuit Rule 3-1, however, a party waives the ability to appeal a district court's order relying on unobjected to factual and legal conclusions in a magistrate judge's report. In such cases, we review waived objections for plain error "if necessary in the interests of justice." 11th Cir. R. 3-1. *See Harrigan v. Metro Dade Police Dept. Station #4*, 977 F.3d 1185, 1191 (11th Cir. 2020).

## A

There are two steps for a federal court to determine whether it has personal jurisdiction over a nonresident defendant. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, "we must determine whether the Florida long-arm statute provides a basis for personal jurisdiction." *Id.* If the answer is yes, "then we must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Id.* (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253,256 (11th Cir. 1996)).

We discuss only the second step because Mr. Matus does not challenge that Florida's long-arm statute, Fla. Stat. § 48.193.(1)(a)(2), applies. Micro, in turn, has not argued for any other provision of the long-arm statute. In reference to §

48.193.(1)(a)(2), we have acknowledged that the due process analysis is the "more restrictive" step. *See Internet Solutions Corp. v. Marshall*, 611 F.3d 1368, 1371 n.1 (11th Cir. 2010 (remanding for district court to consider the "more restrictive" step of whether the exercise of jurisdiction would violate due process)).

**B**

In specific jurisdiction cases, we examine "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citation omitted). The plaintiff bears the burden of establishing the first two requirements. *See id.* If it carries that burden, Mr. Matus must then make a "'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

Mr. Matus' only contacts with Florida are his allegedly tortious emails and calls to Mr. Bueno in Florida to induce Micro into settlement. Micro does not appear to be challenging the magistrate judge's unobjected to finding, and the district court's reliance on

23-11062                Opinion of the Court                9

the same, that Mr. Matus did not intend for Micro to wire the settlement money from a Florida or even U.S. bank account. And in any event, we do not find any error.

Under the first prong, Mr. Matus' communications into Florida are certainly related to Micro's claims in that without them there would be no contract or fraud.

Where Micro runs into trouble is the second prong. Plaintiffs suing nonresident defendants can establish purposeful availment under the effects test and the minimum contacts test. *See Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275–76 (11th Cir. 2022). Micro relies exclusively on the effects test. This test is met when the tort was intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state. *See id.* at 1276.[2]

In *SkyHop Techs., Inc. v. Narra* 58 F.4th 1211, 1230–31 (11th Cir. 2023)—a case Micro calls "directly on point"—we held that California residents satisfied the effects test when they extorted a Florida company they were in business with via emails sent into Florida. In contrast, this litigation's connection to Florida is much more attenuated. This is an employment dispute between a Chilean citizen residing in Guatemala and a Guatemalan bank. The alleged breach of contract took place in Guatemala when Mr.

---

[2] In some ways, this is an awkward fit. This is more of a breach of contract case than a tort case. Given that Mr. Matus has not raised this issue, we nonetheless proceed with our analysis.

Matus initiated legal proceedings *in* Guatemala.  Mr. Matus last visited Florida in 2014, two years before his termination.  Mr. Bueno serves as the chairman of the board of directors of the Guatemalan bank and as vice president of Micro.  In negotiating with Mr. Matus, Mr. Bueno did so on behalf of *both* entities.[3]

So, how is Florida, and not Guatemala, the "focal point" of the harm?  *See Calder v. Jones*, 465 U.S. 783, 789 (1984).  The reality is that Florida's tangential connection to this litigation is driven primarily by Micro's presence in Florida and not, as it must be, Mr. Matus' actions.  *See Walden v. Fiore*, 571 U.S. 277, 284–85 (2014).

### III

We affirm the district court's order granting Mr. Matus's motion to dismiss Micro's amended complaint.  We vacate the operative order of dismissal, however, and remand for the district court to correct the dismissal into one without prejudice.  *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1221 (11th Cir. 1999) (affirming dismissal of claims for lack of personal jurisdiction but "instruct[ing] the district court to dismiss these claims without prejudice").

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED IN PART.**

---

[3] Micro calls this a "highly disputed characterization," but its own amended complaint alleges that "Mr. Bueno made it clear that he was negotiating on behalf of Plaintiff, *in addition to* the Related Companies that, as Defendant knew, Plaintiff has managerial control over."  D.E. 50 ¶ 8 (emphasis added).