622 So.2d 37 (1993)
Ray CRUISE and Epic Mortgage and Financial Services, Inc., Appellants,
v.
Timothy GRAHAM, Appellee.
No. 92-0895.
District Court of Appeal of Florida, Fourth District.
July 7, 1993.
Rehearing and Rehearing Denied September 8, 1993.
*38 John T. Mulhall, III, of Rutherford, Minerley & Mulhall, P.A., Boca Raton, for appellants.
Jack Scarola of Searcy, Denney, Barnhart & Shipley, P.A., and Edna L. Caruso, P.A., Barbara J. Campiani, West Palm Beach, for appellee.
Rehearing and Rehearing En Banc Denied September 8, 1993.
HERSEY, Judge.
This is an action for fraudulent misrepresentation in a real estate transaction involving a first and second mortgage. Substantial compensatory and punitive damages were awarded to the plaintiff, and two of the defendants appeal. Various issues are presented for our consideration which require an abbreviated factual background recitation.
Appellee, Timothy Graham, and his late wife sold the parcel of real property in question to Donnie and Maureen Owens. As part of that transaction appellee took back a second mortgage, and the balance of the purchase price was to be obtained through a third-party first mortgage. In order to better secure his second priority position appellee made it a condition of the transaction that the first mortgage could not exceed $35,950.00. By so doing, appellee would be financially able to buy in that mortgage in the event of foreclosure. Buyers obtained a mortgage in excess of the permitted amount ($45,000.00 rather than $35,950.00) through appellant Epic Mortgage and Financial Services, Inc. (Epic) and appellant, Ray Cruise, Epic's employee. Not material to the issues here, Epic referred the mortgage application to Security and Investment Corporation and the subsequent mortgage was assigned to the Glickmans.
Appellee was represented in the transaction by his attorney, Stephen Covert, who provided title insurance to the buyers from the sellers. The mortgage company acquired its own title insurance from a different company. Thus, although the sale and the mortgage transactions were subsequently closed simultaneously, Covert was not privy to the details of the first mortgage, although he did sign it as a witness. Not until the subsequent foreclosure did Graham and Covert realize that the amount of the first mortgage exceeded the permissible limit. The pleadings express that appellee, *39 Graham, lost his interest in the property because he was unable financially to purchase the first mortgage position since he had only planned for an indebtedness within the range permitted by his agreement with the buyers. He filed suit for fraudulent misrepresentation and prevailed below. That judgment is the subject of this appeal.
Appellants argue first that their motion for summary judgment should have been granted because appellee alleged in his complaint that he had communications with appellants, where, in fact, any such communications were between appellants and appellee's attorney. This argument is without merit. An attorney acts as the client's representative, and representations made to the attorney are representations made to that attorney's client. Cf. Andrew H. Boros, P.A. v. Arnold P. Carter, M.D., P.A., 537 So.2d 1134, 1135 (Fla. 3d DCA 1989) ("Generally, an attorney serves as agent for his client; the attorney's acts are the acts of the principal, the client."); Kates v. Millheiser, 569 So.2d 1357 (Fla. 3d DCA 1990) (same); see also Joseph v. Norman LaPorte Realty, Inc., 508 So.2d 496, 497 (Fla. 3d DCA 1987) (legally irrelevant that fraudulent misrepresentations were made to the plaintiffs' agent rather than to them directly).
Additionally, appellee's attorney, Stephen Covert, in response to appellants' motion for summary judgment, submitted an affidavit that at all times he was acting as agent for appellee in all transactions with Cruise and Epic. Covert also stated that he reviewed the amended complaint and all the representations made by Cruise and Epic were made to him as agent for appellee.
Furthermore, summary judgment was properly denied because there were genuine issues of material fact concerning the representations appellants made to appellee. See Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985); Holl v. Talcott, 191 So.2d 40 (Fla. 1966); see also Meyers v. Shore Indus., Inc., 597 So.2d 345, 346-47 (Fla. 2d DCA 1992).
Appellants also argue that the trial court erred in denying their motion for a directed verdict on the issue of fraud. Presented with a motion for a directed verdict, a trial court must view all the evidence in a light most favorable to the non-movant; when any evidence is disputed, all conflicting evidence is to be resolved in favor of the non-movant. See Stokes v. Ruttger, 610 So.2d 711, 713 (Fla. 4th DCA 1992); see also Collins v. School Board of Broward County, 471 So.2d 560 (Fla. 4th DCA 1985) (the standard of review on a ruling on a motion for judgment in accordance with the movant's prior motion for directed verdict is identical to that where an ordinary motion for directed verdict is involved), writ dismissed, 491 So.2d 280 (Fla. 1986). Cf. Sunchase Apts. v. Sunbelt Serv. Corp., 596 So.2d 119, 122 (Fla. 1st DCA 1992) (claims in which fraud is an issue ordinarily should not be resolved by summary judgment); Barrios v. Duran, 496 So.2d 239 (Fla. 3d DCA 1986) (same).
Viewing the evidence most favorable to appellee and resolving all conflicts in favor of appellee, it cannot be said that a prima facie case of fraud was not made out here. First, appellee was damaged when the Owenses defaulted on their mortgage and appellee could not pay off the first mortgage. Because the first mortgage was higher than appellee understood it to be, he did not have sufficient funds. As a result, he lost all claims and interests he had in the property. Second, appellee asserted that he had justifiably relied on the oral representations made by Cruise, whereas appellants assert that the reliance was not justifiable, so that dispute must be resolved in favor of appellee where he was the non-movant for the directed verdict. Lastly, while the misrepresentation had been first made on the telephone two months prior to the closing, it was carried out at the closing when the documents were executed with a higher than agreed-to first mortgage amount.
Taking the evidence in a light most favorable to the non-movant and resolving all conflicting evidence in favor of the non-movant, the elements of fraud were sufficiently *40 demonstrated to withstand a motion for judgment in accordance with a directed verdict.
Another basis for reversal urged by appellants is the failure of the trial court to give a jury instruction on comparative fault. Specifically, appellants objected to the trial court's refusal to instruct the jury on appellee's duty to investigate the representations made to him, thus holding him comparatively negligent for any fraud perpetrated on him and appellee. Appellants rely on the case of Gold v. Perry, 456 So.2d 1197 (Fla. 4th DCA 1984), to support their argument that the trial court erred in not instructing the jury on comparative fault.
In Gold v. Perry, this court held that the trial court erred in instructing the jury that a party who investigates a matter is charged with the constructive knowledge of whatever a reasonable investigation would have revealed. 456 So.2d at 1199. The Gold court reasoned that a party who conducts a negligent investigation should not suffer more from a fraudulent misrepresentation than a party who conducts no investigation at all. Id. at 1201. The court stated that, "the defrauder should not be shielded by his victim's negligence." Id.
Quoting the supreme court's previous opinion in Besett v. Basnett, 389 So.2d 995, 998 (Fla. 1980), the Gold court concluded by holding, "[A] recipient may rely on the truth of the representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." 456 So.2d at 1201. So while this court's opinion in Gold is instructive on the issues in the instant case, it does not favor appellants' position; rather it supports appellee's position.
Additionally, the Third District in Mazzilli v. Doud, 485 So.2d 477 (Fla. 3d DCA), rev. dismissed, 492 So.2d 1333 (Fla. 1986), held that the trial court properly refused to reduce the amount of a judgment because comparative negligence is not a defense to any tort legally classified as intentional. Id. Consequently, the Mazzilli court held that because assault and battery is an intentional tort, comparative negligence cannot be used to reduce a judgment awarded for that tort. See also Honeywell, Inc. v. Trend Coin Co., 449 So.2d 876, 879 (Fla. 3d DCA 1984) (holding argument that comparative fault is a defense to various offenses, including intentional misrepresentation, is without merit), approved in part, quashed in part, 487 So.2d 1029 (Fla. 1986). Cf. Deane v. Johnston, 104 So.2d 3 (Fla. 1958) (contributory negligence is not a bar to intentional torts); Acosta v. Daughtry, 268 So.2d 416, 419 (Fla. 3d DCA 1972) (same), cert. denied, 277 So.2d 788 (Fla. 1973); Leonard v. Nat Harrison Assocs., Inc., 122 So.2d 432, 434 (Fla. 2d DCA 1960) (contributory negligence is not a proper defense to the intentional tort of trespass).
Fraudulent misrepresentation is an intentional tort. See Rappaport v. Jimmy Bryan Toyota of Ft. Lauderdale, Inc., 522 So.2d 1005, 1006 (Fla. 4th DCA 1988) (intentional misconduct is a necessary element of fraud); see also 27 Fla.Jur.2d Fraud and Deceit § 93 (1981). Therefore, comparative negligence is not available as a defense, and the trial court did not err in denying appellants' requested jury instruction thereon.
While some of the concerns of appellants as to the clarity of the verdict form are shared by this court, the fact is that appellants' trial counsel expressly stated that he did not have a problem with that Page of the verdict form. Thus, we do not reach the question of whether the form may have been misleading.
The thrust of appellants' next argument is that appellee, as plaintiff below, failed to show any actual damages resulting from appellants' conduct. That conclusion is compelled, argue appellants, from the fact that the summary judgment entered in the foreclosure proceeding was based upon a reduced amount, as though the first mortgage had been in the amount permitted by the purchase and sale agreement rather than the actual larger amount of $45,000.00. Appellants summarize the argument thusly in their brief:
Given the fact that the first mortgage was reduced to $35,950.00, an amount equal to the amount which Plaintiff *41 claims he relied upon in entering into the transaction with the Owenses, Plaintiff cannot maintain that he sustained damages because of a higher mortgage amount. In fact, the reduction of the principal amount of the first mortgage to $35,950.00 placed Plaintiff in exactly the same position he would have been in had a $35,950.00 first mortgage been executed at closing.

(Emphasis in original.)
This is a misleading argument. The record makes clear that at no time was plaintiff afforded the opportunity to take over the first mortgagee's position for the sum of $35,950.00, the amount he had placed in reserve to protect himself from the mortgagor's default on that mortgage. In fact, the record makes clear that the property went to sale for $55,862.70, a sum $20,000.00 higher than originally contemplated. Thus, plaintiff lost the property and accordingly suffered damages.
Finally, appellants offer that the trial court should have directed a verdict on the question of punitive damages. We immediately distinguish from the present case those authorities relied on by appellants which present negligence as opposed to intentional wrongs. Having done that, we confront the only remaining contention of appellants that warrants discussion.
Appellant argues that the trial court failed to direct a verdict on the issue of punitive damages where appellee did not introduce any evidence that appellants' conduct was outrageous or reprehensible. However, that is not the standard on whether to direct a verdict on the issue of punitive damages. This court has held "[t]he rule now seems clear in Florida that a claim of fraud sufficient to justify compensatory damages is also sufficient to support an award of punitive damages." Rappaport, 522 So.2d at 1006 (in all cases of fraud, the jury is empowered to award punitive damages). Accord First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536, 539 (Fla. 1987); see also Lou Bachrodt Chevrolet, Inc. v. Savage, 570 So.2d 306, 308 (Fla. 4th DCA 1990) (a claim of fraud sufficient to support a finding of compensatory damages is sufficient to support a claim of punitive damages being presented to the jury), rev. denied, 581 So.2d 165 (Fla. 1991); Blue Cross/Blue Shield of Florida, Inc. v. Weiner, 543 So.2d 794, 797 (Fla. 4th DCA) (same), rev. denied, 553 So.2d 1164 (Fla. 1989), cert. denied, 494 U.S. 1028, 110 S.Ct. 1475, 108 L.Ed.2d 612 (1990).
Here, appellee alleged a prima facie case of fraud, and the jury found that the evidence supported an award of compensatory damages. Upon ruling on a motion for directed verdict for the punitive damages, the trial court views these allegations most favorable to appellee and resolves any conflicts in his favor as well. Viewed in the light most favorable to and with all conflicts resolved in favor of the nonmovant, there was sufficient evidence of the requisite elements of fraud; thus it was not error for the trial court to submit to the jury the issue of punitive damages.
We find no merit in any of the other arguments presented by appellants for our consideration and we therefore affirm in all respects.
AFFIRMED.
GUNTHER and STONE, JJ., concur.