**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-12580
_____

ECB USA, INC.,
  a Florida corporation,
ATLANTIC VENTURES CORP.,
  a Florida corporation,

                                                            *Plaintiffs-Appellants,*

*versus*

SAVENCIA CHEESE USA, LLC,
ALEX BONGRAIN,
  an individual,
J.M. WILD,
  an individual,
LEWIS GITLIN,
  an individual,
PIERRE RAGNET,
  an individual,
TOM SWARTELE,
  an individual,

                                                            *Defendants-Appellees.*

—————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-21681-AHS

—————————————

Before JORDAN and BRASHER, Circuit Judges, and COVINGTON,[*] District Judge.

BRASHER, Circuit Judge:

We grant the petition for rehearing in part, withdraw our previous opinion, and replace it with the following.

This appeal is about personal jurisdiction. After a business deal went bad, the foreign buyers of a Delaware-incorporated, New Jersey-based cheese distribution company sued the foreign sellers in Florida. ECB USA and Atlantic Ventures acquired the cheese company after five individuals allegedly misrepresented the company's corporate governance structure and finances. Neither the sellers nor the buyers lived in Florida while the deal was negotiated, and the deal was mostly negotiated in France. But the buyers hired a Florida lawyer to represent them in the deal and moved the company to Florida after the closing.

The buyers sued everyone in Florida: the individual sellers for fraud and related torts and a corporate defendant, Savencia Cheese, for interfering with a key employment relationship after

———————————————

[*] Honorable Virginia M. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

the closing. The district court dismissed the claims against the sellers for lack of personal jurisdiction and dismissed the claims against Savencia Cheese for failure to state a claim. The buyers appealed.

After thorough review, and with the benefit of oral argument, we affirm the district court. The main question is whether the buyers' use of a Florida lawyer to represent them in the deal means that the foreign sellers, which necessarily communicated with that lawyer, can be sued in Florida over their pre-deal statements. Because due process requires more than a plaintiff's unilateral conduct to confer jurisdiction in a forum, we agree that the district court lacked jurisdiction. We also agree with the district court that the buyers failed to plead sufficient facts to state a claim against Savencia Cheese.

## I.

Because the buyers appeal from granted motions to dismiss, we accept the facts that they allege as true and view those facts in the light most favorable to them. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1128 (11th Cir. 2019).

Five individual defendants, the sellers,[1] found a buyer for a United States-based cheese importation and distribution company,

---

[1] This dispute involves many individuals and businesses. Because the relevant legal issues do not turn on those details, for simplicity and clarity, we refer to ECB USA and Atlantic Ventures, as well as their representatives leading up to the sale, as "the buyers." And we refer to the five individually named

Schratter Foods Incorporated. These sellers consisted of individuals who held officer positions at Schratter or its parent corporations or subsidiaries. No seller lives or has worked in Florida. Schratter—at the time the sellers sought a buyer—was a Delaware corporation headquartered in New Jersey.

According to the buyers, the sellers planned to strip Schratter of its assets before the sale. To do so, the sellers started moving assets from Schratter to affiliate businesses. They also broke Schratter's bylaws to put a seller—replacing Alain Voss, who served as president and chief executive officer of Schratter for over twenty years—in the "de facto position of Chief Executive Officer." To execute this replacement agreement, the sellers paid Voss $350,000. All agreements between Voss and the sellers contained confidentiality agreements. The sellers also paid their chief financial officer, Bertrand Proust, to assist in the scheme by influencing "the audits of Schratter's financial statements and internal controls."

Through Voss and Proust, the sellers "conceal[ed] Schratter's true financial condition and deficiencies in internal controls, hid[] related party transactions, and misrepresent[ed] corporate organization and management structure." The sellers also misrepresented the corporate governance structure and financial health of the company to induce an unknowing buyer to enter the sale.

---

defendants as "the sellers" even though companies, in which they held officer positions, signed the documents consummating the sale.

Negotiations with the buyers—French nationals who do not live in the United States—began in August 2014. Two months later the buyers hired a Miami-based attorney to represent them in the purchase.

During negotiations, the sellers told the buyers—and their Florida-based attorney—that Voss still managed the company. They also created a virtual "data room," from which the buyers and their representatives—including their Florida-based attorney—accessed the due diligence documents. Those documents failed to reveal the corporate governance structure and financial conditions of Schratter.

Relying on these documents and conversations, the buyers went forward with the purchase. The buyers and the sellers met in Paris, France, to finalize the stock purchase agreement.

They set out the terms of the deal in the stock purchase agreement, including closing terms and a forum selection clause. The parties agreed to close at the "offices of Morgan, Lewis, Bockius LLP, 200 S. Biscayne Blvd., Suite 5300, Miami, Florida 33131-2339, or remotely by electronic exchange of executed documents and other deliverables." The agreement also included a choice of law clause, which stated that the agreement would be interpreted consistent with Florida law, and the parties consented to an "exclusive jurisdiction" provision that required "[a]ny action or proceeding in connection with" the agreement to "be brought in a court of record of the State of Delaware in and the City of Wilmington or in the United States District Court in such county."

Following the conversations in Paris, the parties closed the deal with a virtual closure on December 31st. The buyers' Florida-based attorney made escrow and payment arrangements from Florida. Relying on the sellers' representations of Voss's role at Schratter and because they lacked the ability to work in the United States, the buyers kept Voss as Schratter's chief executive officer. When the deal closed, they moved Schratter's headquarters from New Jersey to Florida. That transition started in 2015 and continued through 2017.

About six months after the deal closed, and with Voss as the chief executive officer, Schratter signed a distribution agreement with Savencia Cheese that gave away substantial pricing discounts. Eventually, the sellers' misrepresentations and Savencia Cheese's inducement of Voss to negotiate away pricing discounts drove Schratter "into insolvency."

The buyers filed an initial complaint but amended it after the sellers and Savencia Cheese filed a motion to dismiss. The buyers' complaint asserts seven claims against the sellers and five claims against Savencia Cheese: (1) fraud against the sellers; (2) another count of fraud against the sellers; (3) conspiracy to commit fraud against the sellers and Savencia Cheese; (4) aiding and abetting a breach of fiduciary duty against the sellers and Savencia Cheese; (5) conspiracy to commit a breach of fiduciary duty against the sellers and Savencia Cheese; (6) conspiracy to commit constructive fraud against the sellers and Savencia Cheese; and (7) tortious interference with a contract against Savencia Cheese. Because the buyers

allege that the sellers and Savencia Cheese committed, or conspired to commit, intentional torts in Florida, they argue that Fla. Stat. § 48.193(1)(a)(2) confers specific personal jurisdiction over the sellers.

The sellers submitted affidavits stating that they never resided, worked, owned, or leased property in Florida. Two sellers, who executed the stock purchase agreement, stated that they participated in the deal closing in France. The sellers requested that the district court dismiss the action because it lacked jurisdiction over them. Savencia Cheese also moved to dismiss for the buyers' failure to state a claim against it.

The district court granted both motions to dismiss. The district court determined that it lacked jurisdiction over the sellers and that the complaint failed to state a claim against Savencia Cheese. It dismissed with prejudice the claims against Savencia Cheese.

The buyers appealed both dismissals.

## II.

We review a district court's dismissal for lack of jurisdiction and for failure to state a claim *de novo*. *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024). At the motion to dismiss stage, we accept factual allegations as true and construe them in the light most favorable to the plaintiff. *Almanza v. U.S. Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). "When a defendant submits an affidavit contesting the basis for personal jurisdiction, 'the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction.'"

*SkyHop Techs., Inc v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023) (quoting *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021)). The district court, and this Court on appeal, must construe inferences in favor of a plaintiff's complaint if the complaint and the defendant's affidavits conflict. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

**III.**

The buyers make two arguments on appeal. First, they argue that the district court erred in dismissing their claims against the sellers (except for Savencia Cheese) for lack of personal jurisdiction. Second, they contend that their complaint sufficiently states claims for conspiracy, aiding and abetting a breach of fiduciary duty, and tortious interference with a contract against Savencia Cheese. We address each issue in turn.

*A.*

A federal court sitting in diversity "must undertake a two-part analysis." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996). First, we ask whether the exercise of personal jurisdiction falls under the state's long-arm statute, and second, whether it comports with the Due Process Clause of the Fourteenth Amendment. *Id.*

Florida's long-arm statute provides for specific jurisdiction over defendants who have committed torts in the state. Fla. Stat. § 48.193(1)(a)(2). Specifically, it provides that "[a]ny person" who "commit[s] a tortious act within the state" is subject to "the

jurisdiction of the courts of this state for any cause of action arising" from the "act." *Id.* The "reach of Florida's long-arm statute 'is a question of Florida law,' and this Court is required to apply the statute 'as would the Florida Supreme Court.'" *Louis Vuitton, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "We are also bound to adhere to the interpretations of Florida's long-arm statute offered by Florida's District Courts of Appeal absent some indication that the Florida Supreme Court would hold otherwise." *Id.*

The Due Process Clause requires, in the case of specific personal jurisdiction, that an out-of-state defendant have certain "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). An out-of-state defendant has minimum contacts with the forum when "(1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022) (quoting *Louis Vuitton*, 736 F.3d at 1355). The plaintiff bears the burden of establishing the first two requirements, and then the burden shifts to the defendant to establish that our exercise of jurisdiction would offend principles of fair play and substantial justice. *Louis Vuitton*, 736 F.3d at 1355.

The buyers argue that the district court has personal jurisdiction because the sellers committed torts against them in Florida

while negotiating and executing the deal and again after the deal. Specifically, the buyers say that the sellers committed fraud and related torts when they made misrepresentations by placing documents in a virtual data room that the buyer's closing counsel accessed from Florida. As for post-deal conduct, the buyers say, among other things, that the sellers conspired with the new company's employees in Florida after the sale to induce a breach of fiduciary duty and commit other tortious acts. We will address each of these theories separately, starting with the sellers' pre-deal conduct.

1.

We start with the buyers' allegations of tortious conduct before and when the parties executed the stock purchase agreement—the pre-closure period. During negotiations, neither the buyers nor the sellers were residents of Florida, and the business was not based in Florida. The buyers did, however, establish two Florida-registered shell companies—one on the day before signing the agreement, and the other three days afterward—for the purpose of consummating the deal. The sellers argue that any pre-closure connection between themselves and Florida resulted entirely from the buyers' decision to hire a Florida lawyer to represent them in the transaction, which required the sellers to communicate with that lawyer as the buyers' agent. They say that personal jurisdiction cannot be based on such a tenuous link with the forum state. We agree.

As an initial matter, we believe the question under the long-arm statute—whether the sellers "commit[ted] a tortious act within" Florida—is a difficult one. Fla. Stat. § 48.193(1)(a)(2). On one hand, the sellers placed the allegedly fraudulent representations in the virtual data room so they could be viewed by the buyers and their representatives. The buyers' attorney was in Florida and, presumably, viewed the documents there. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1253 (Fla. 2002) (torts may be committed in the state for long-arm purposes electronically or telephonically). On the other hand, the alleged fraud was not committed against the attorney in Florida, but against the individual buyers who lived elsewhere or shell corporations created solely for the deal. *See Cruise v. Graham*, 622 So. 2d 37 (Fla. Dist. Ct. App. 1993) (misrepresentations to an attorney are misrepresentations to the attorney's client). "Rather than attempting an *Erie* 'guess' as to how the Florida Supreme Court would rule on this issue," *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1143 (11th Cir. 2010), we will assume without deciding that Florida's long-arm statute authorizes jurisdiction and go from there.

Turning to the federal question of whether jurisdiction based on these pre-closing contacts would be consistent with due process, we think the answer is a straightforward "no." The sellers have minimum contacts with Florida only if the (1) buyers' claims arose from the sellers' contacts with Florida, (2) the sellers "purposefully availed" themselves of the privilege of conducting activities in Florida and (3) the exercise of personal jurisdiction accords with "traditional notions of 'fair play and substantial justice.'" *Del*

*Valle*, 56 F.4th at 1275 (quoting *Louis Vuitton*, 736 F.3d at 1355). Whatever may be said of the first requirement—arising out of—we cannot conclude that the second two are met.

The *buyers'* decision to hire Florida-based deal counsel does not mean the sellers purposefully availed themselves of Florida when they allegedly made misstatements to close the deal or that it would be fair to make them litigate there. In cases of intentional torts, we have applied two tests to assess "purposeful availment": the effects test and the minimum contacts test. *SkyHop Techs.*, 58 F.4th at 1230. Under the effects test, the tort must have been (among other things) "aimed at the forum state" and must have "caused harm that the defendant should have anticipated would be suffered in the forum state." *Del Valle*, 56 F.4th at 1276. As a matter of minimum contacts, the defendant's contacts with the forum state must (among other things) "involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and . . . are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.*

The buyers' arguments fail both tests. Nothing in the complaint suggests that the sellers "aimed" their alleged tortious conduct at Florida or "purposefully" availed themselves of the privileges of doing business there. The complaint does not identify anything that was communicated to the buyers' lawyer in Florida that was not communicated to the individual buyers themselves. Instead, the complaint alleges that the sellers' misrepresentations

began "[f]rom the inception of the ECB Representatives' dealings with Voss in the fall of 2014"—long before the deal had any connection to Florida at all. Likewise, there was no good reason for the sellers to anticipate harm to anyone in Florida. Although the buyers established Florida-registered shell corporations to close the deal, no individual buyer was a Florida resident and the business was not located there. *Cf. Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008) (effects test met when tort is "expressly aimed at a specific individual in the forum whose effects were suffered in the forum").

The buyers argue that it is enough that their attorney "accessed documents in the data room from Miami-Dade County, Florida," which provided "incomplete, inaccurate, and untruthful" information. We disagree. The location of the buyers' attorney was a happenstance from the sellers' perspective. Personal jurisdiction cannot be predicated "on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff." *Walden v. Fiore*, 571 U.S. 277 (2014). Here, the sellers provided the Florida-based attorney with a link to the data room because the buyers hired him. As we see it, the buyers "unilaterally" created the relationship between their attorney and the sellers. That relationship, and, in turn, the connection to Florida, only existed so long as the buyers said that it did. Such an "attenuated" connection to the forum state fails to "tether[]" the buyers in any meaningful way to that forum. *Id.* at 290, 291. And although the buyers' argument relies on their Florida-based attorney's location, their complaint references other "professional advisors and consultants" who

accessed the data room "elsewhere." The sellers had to provide access to the virtual data room "elsewhere"—whichever forums that may have been—because of the buyers' unilateral hiring choices.

We are concerned with the sellers' "intentional conduct" to "create[] the necessary contacts with the forum." *Walden*, 571 U.S. at 286; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* . . . ."); *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) (explaining that to assess minimum contacts, we focus on "the relationship among the defendant, the forum, and the litigation"). The Due Process Clause ensures an out-of-state defendant has fair notice that he might be haled into the forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). And we cannot say that allowing a putative plaintiff to establish jurisdiction by "unilateral[ly]" hiring an agent for a business deal—after negotiations have started—provides a defendant fair notice of where he will be subject to a court's jurisdiction. *Walden*, 571 U.S. at 291. And the fact that the buyers created a Florida-registered shell corporation to consummate the deal does not change the analysis. *See Skyhop Techs.*, 58 F.4th at 1230.

Although the buyers also say that the deal closed in Florida, there is no basis for that inference. The actions of the buyers' attorney at closing, which included facilitating "escrow and payment arrangements . . . in Florida," is "precisely the sort of 'unilateral activity' of a third party that 'cannot satisfy the requirement of contact with the forum State.'" *Id.* at 291 (citing *Hanson v. Denckla*, 357

U.S. 235, 253 (1958)). Unable to rely on their attorney's conduct in Florida, nothing in the terms of the stock purchase agreement or complaint support their argument that the deal, in fact, closed in Florida. The terms of the stock purchase agreement specified two permissible closing locations: a law office in Miami "or remotely by electronic exchange of executed documents and other deliverables." The disjunctive "or" permitted a virtual closing, and that's what occurred. Two sellers stated in their affidavits that, after the parties met in Paris to finalize negotiations, the deal closed virtually.

Finally, we cannot say the buyers' attorney-based theory is consistent with traditional notions of fair play and substantial justice. *Louis Vuitton*, 736 F.3d at 1355. As we see it, Florida has little "interest in adjudicating [a] dispute" about the sale of a Delaware company that was negotiated in France at a time when neither the sellers nor buyers were residents of Florida. *World-Wide Volkswagen*, 444 U.S. at 292. Parties to commercial transactions hire agents—whether counsel, consultants, or accountants—based on skill and expertise wherever they may be. The location of such agents may be relevant to personal jurisdiction when a business deal goes bad. But a rule that provides for personal jurisdiction based on the location of such an agent *alone* would be unfair and unworkable. Forum selection would be a game of gotcha, not of fairness. We decline to adopt such a rule.

2.

Next, we address the post-closure conduct. The buyers argue that jurisdiction is appropriate based on post-closure contacts because a non-party co-conspirator committed a tort in Florida, they felt the effects of the tortious conduct in Florida, and their attorney received a tortious communication in Florida. We address each argument in turn.

We begin our analysis of the co-conspirator theory of jurisdiction with the Florida long-arm statute. In doing so, we need not take an *Erie* "guess," *Pendergast*, 592 F.3d at 1143, as to how the Florida courts would rule. They've addressed the pleading requirements of a conspiracy claim as an alleged basis for jurisdiction under the Florida long-arm statute. *See Mazer*, 556 F.3d at 1281. When a civil conspiracy is the "tortious act," "some of [the] acts" of a conspirator must "alleged[ly] . . . have been accomplished within the state of Florida." *Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla. Dist. Ct. App. 1994). And the "threshold question that must be determined is whether the allegations of the complaint state a cause of action" for conspiracy. *Wendt*, 822 So. 2d at 1260.

We cannot say the buyers' co-conspirator theory satisfies the Florida long-arm statute for two reasons.

First, the buyers' allegations about a non-party co-conspirator's Florida-based conduct rely on conclusory and general statements. Across the forty pages of the complaint, we identify six allegations that explicitly reference alleged co-conspirators' conduct in Florida after the deal closed:

- "during the period that Schratter was headquartered in Miami, and until his termination, Voss continued to be the Inside Man for the [sellers'] Conspiracy and committing wrongful acts designed to continue and conceal the frauds";
- "Voss and Proust, much of the time from Miami, 'cooked the books' of [the company] to make it appear that [its] business was doing far better than it actually was";
- "[t]he wrongful conduct continued as Schratter moved its headquarters to Miami-Dade County, Florida, which move started in 2015 and continued through 2017";
- "Voss committed acts in furtherance of the [sellers'] Conspiracy while a director and president of Atlantic Ventures, a Florida corporation";
- "[d]uring the years 2016 through 2018, Savencia Cheese directed communications in furtherance of the Distribution Fraud to Plaintiffs in Florida, including, but not limited to, sending invoices for payment for foreign affiliate cheeses and domestic cheeses to Florida"; and
- "[d]uring the ensuing years" after the deal closed, "Voss in his conflicting roles as Schratter's president and CEO, Atlantic Venture's president and director, and the [sellers'] Conspiracy's inside man, continued his tortious conduct on behalf of the [sellers'] Conspiracy in Miami."

None of these allegations are "clear, positive and specific." *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. Dist. Ct. App. 2021). Instead, these allegations recite the elements of a Florida civil

conspiracy claim, relying on conclusory allegations. *See id.* But Florida law demands more than general statements to satisfy its long-arm statute: "a court will decline to apply the co-conspirator theory to extend jurisdiction over nonresidents if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants." *NHB Advisors, Inc. v. Czyzyk*, 95 So. 3d 444, 448 (Fla. Dist. Ct. App. 2012). We cannot say that allegations of "tortious conduct," "tortious acts," "wrongful acts," "cook[ing] the books" or "committing acts in furtherance of" illegal conduct pleads with sufficient specificity the existence of an unlawful conspiracy that included the sellers' nonparty co-conspirator in Florida. *See Parisi*, 314 So. 3d at 662 (finding that a party failed to satisfy the long-arm statute by alleging "simply that the co-defendants had an 'agreement'" involving an "illegal" transfer without explaining "how" the individuals conspired).

Second, the complaint's only specific allegation of post-closure tortious conduct never says whether the conduct occurred within Florida. *See* Fla. Stat. § 48.193(1)(a)(2). The crux of the buyers' co-conspirator claim—Voss's fraudulent renegotiation of the stock purchase agreement through a new distribution agreement—never says whether that "overt act" took place in Florida. Instead, the buyers allege when but not where the conduct took place: "working with their co-conspirator Voss, caused Schratter to revoke and give away substantial pricing discounts and rights

through the execution of a distribution agreement between Savencia Cheese and Schratter on June 30, 2015."

Without an allegation that says the renegotiation occurred in Florida, we must piece together other allegations to infer those jurisdictional facts. *See Mazer*, 556 F.3d at 1276. Elsewhere, the buyers allege that Schratter moved its headquarters to Miami in "early 2015." But they did not complete that move until 2017—over a year after Voss's allegedly tortious conduct to execute the new distribution agreement on behalf of Schratter. The complaint also fails to inform us whether Voss worked in Florida, and if so, when he began working there. The allegations (or lack thereof) fail to provide us with "viable facts from which the inference could reasonably be drawn that" the sellers were "part of a conspiracy either engineered in Florida or pursuant to which a tortious act in furtherance was committed in Florida." *Id*. at 1283.

Because the post-closure allegations of the co-conspirators' tortious conduct within Florida are neither "clear, positive [nor] specific," the buyers have failed to meet their burden to establish jurisdiction under the Florida long-arm statute. *Parisi*, 314 So. 3d at 663.

In addition to their co-conspirator theory of personal jurisdiction, the buyers argue that their attorney's location in Florida and their post-closing move to Florida allow for personal jurisdiction. Specifically, the buyers allege that one seller sent fraudulent financial statements to their Florida-based attorney after the deal closed. And they allege that the execution of the distribution

agreement caused a "substantial portion of [the] injuries" to be felt in Florida because they moved there after the deal.

Even assuming these allegations established enough to satisfy Florida's long-arm statute, they would fail due process for the same reasons the pre-closing contacts fail due process. As with their pre-closure arguments, these theories rely on the buyers'—not the sellers'—conduct directed at the forum state. The parties required that the buyers send the financial audits as part of the stock purchase agreement—without specifically mentioning Florida—and the buyers then directed the sellers to send those documents into Florida. And the buyers moved to Florida after the sale—taking any injury with them. We do not rely solely on the effects of tortious conduct in a forum to establish jurisdiction. *See Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1311 (11th Cir. 2022) (explaining that the incidental effects of a defendant's actions are not by themselves sufficient to justify personal jurisdiction).

*              *              *

Because the buyers have neither alleged pre-closure nor post-closure conduct sufficient to establish personal jurisdiction over the sellers, the district court was correct to dismiss their complaint.

*B.*

We now turn to the claims brought against Savencia Cheese. The buyers argue that the district court erred in dismissing five claims: (1) conspiracy to commit fraud; (2) aiding and abetting

breach of fiduciary duties; (3) conspiracy to commit breach of fiduciary duties; (4) conspiracy to commit constructive fraud; and (5) tortious interference with a contract.

Two pleading rules matter here. First, the general pleading rule requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard applies to the buyers' aiding and abetting claims and the tortious inference claim.

Second, the pleading rule for fraud claims requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). We explained that a complaint may satisfy Rule 9(b) by illustrating the following: "(1) precisely what statements were made in what documents or oral representations or what omissions were made"; "(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same"; "(3) the content of such statements and the manner in which they misled the plaintiff"; and "(4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (citation modified). Following this list, we noted that plaintiffs can satisfy Rule 9(b) through alternative means that identify the nature or subject of the statements constituting the fraud. *Id.*

*Twombly* and *Iqbal* instruct our analysis of whether a complaint meets these pleading rules. We omit conclusory statements of a claim from a motion to dismiss analysis. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 561 (2007). Because Rule 12(b)(6) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," allegations must rise beyond a "speculative level" to "state a claim to relief that is plausible on its face." *Id.* at 555, 570. *Iqbal* made clear that *Twombly*'s standard applies to all civil actions and explained the "working principles" that guide our Rule 12(b)(6) analysis: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

With these standards in mind, we assess each claim.

1.

We begin with the three conspiracy claims. The buyers allege that Savencia Cheese conspired to commit fraud, conspired to commit breach of fiduciary duties, and conspired to commit constructive fraud. To establish a civil conspiracy claim, the buyers must plead sufficient facts that show (1) "an agreement between two or more parties," (2) "to do an unlawful act or to do a lawful act by unlawful means," (3) "the doing of some overt act in pursuance of the conspiracy," and (4) "damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997).

To start, the complaint alleges that Savencia Cheese participated in a distribution agreement scheme. That allegation, as we read the complaint, is the only one that focuses on Savencia

Cheese's conduct instead of the conduct of the sellers. So, as we see it, all three conspiracy claims depend on whether the allegation of the "distribution agreement fraud" meets the pleading requirements. To support that allegation of Savencia Cheese's conduct, the buyers allege that Savencia Cheese signed a distribution agreement that "change[d] the terms" of the stock purchase agreement. This agreement occurred because the sellers "and Savencia Cheese, working with their co-conspirator, Voss, caused Schratter to revoke and give away substantial pricing discounts and rights through the execution of [the] distribution agreement." Because of the agreement, Savencia Cheese "overcharge[d] for foreign cheese it sold to Schratter" and "cease[d] to distribut[e] other foreign cheese to Schratter."

We cannot say that these allegations satisfy the applicable pleading standards. As *Twombly* made clear, Rule 12(b)(6) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. at 555. The buyers' complaint falls short of that standard because it relies on legal conclusions and the elements of a conspiracy: "each of the [sellers] and Savencia Cheese acted in *furtherance of*" the conspiracy; "[t]he [sellers'] Conspiracy also required the participation of Savencia Cheese to undermine valuable rights to discounts provided to [the buyers] in the Stock Purchase Agreement"; and "[i]n the months before June 30, 2014, the [sellers] and their co-conspirators *agreed* to implement the [sellers'] Conspiracy."

Alleging that the parties "agreed" and "acted in furtherance" of the conspiracy restates the language of a Florida conspiracy claim. *Raimi*, 702 So. 2d at 1284. And the allegation that the conspiracy required Savencia Cheese's participation fails to tell us "any facts evidencing how" Savencia Cheese participated. *Parisi*, 314 So. 3d at 662. That allegation assumes that the necessity of one party to a conspiracy's success proves that party's participation. But such an assumption transforms civil conspiracy claims into strict liability offenses.

Moreover, we find an "obvious alternative explanation" for Savencia Cheese's conduct. *Twombly* 550 U.S. at 567. Among plausible alternatives, Savencia Cheese, as a distributor to Schratter, could have signed the agreement for a lawful purpose: to increase profits. This lawful rationale would serve as another justification for execution of the agreement.

Because the three conspiracy claims against Savencia Cheese rest on conclusory and implausible facts, the district court correctly dismissed those claims.

2.

Now to the buyers' aiding and abetting claims. To prove that Savencia Cheese aided and abetted Voss to breach his fiduciary duty, the buyers must establish the following: (1) "a fiduciary duty on the part of a primary wrongdoer"; (2) "a breach of that fiduciary duty"; (3) "knowledge of the breach by the alleged aider and abettor"; and (4) "the aider and abettor's substantial assistance or

encouragement of the wrongdoing." *Fonseca v. Taverna Imps., Inc.*, 212 So. 3d 431, 442 (Fla. Dist. Ct. App. 2017).

The buyers argue, on appeal, that their complaint alleges "in detail" that Savencia Cheese knew of Voss's role and "fraudulently" induced the buyers to "take him as a fiduciary." We read the complaint differently.

We begin our analysis with the complaint's language: "Savencia Cheese also aided and abetted the breaches of fiduciary duty so that it could undermine the discounted cheese prices and distribution rights contained in the Stock Purchase Agreement." The sellers "and Savencia Cheese aided and abetted Voss's actions to undermine Plaintiffs' rights to discounted cheese prices and distribution rights which were contained in the Stock Purchase Agreement." "Savencia Cheese caused special damages" by "caus[ing] Voss's execution of the Distribution Agreement." And "Savencia Cheese acted with malicious disregard for Plaintiffs" knowing the financial impact of the agreement.

These allegations recite the elements of an aiding and abetting claim. Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The complaint fails to meet this standard. It alleges that other defendants—not Savencia Cheese—had knowledge of Voss's role and planned to defraud Schratter leveraging his inside role. The buyers ask us to infer from these allegations that Voss signing the distribution

agreement sufficiently demonstrates that Savencia Cheese encouraged Voss to breach his duty. But that inference requires us to "speculate" as to a required element of this claim. Pleading requires more: "[f]actual allegations"—"assum[ing] that all the allegations in the complaint are true"—"must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

As a result, the complaint fails to allege facts to establish that Savencia Cheese aided and abetted Voss in breaching his fiduciary duty.

3.

We end with the buyers' tortious interference with a contract claim. Florida law requires five elements to establish a cause of action for tortious interference with a contractual relationship: "(1) [t]he existence of a contract"; "(2) [t]he defendant's knowledge of the contract"; "(3) [t]he defendant's intentional procurement of the contract's breach"; "(4) [a]bsence of any justification or privilege"; and "(5) [d]amages resulting from the breach." *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397–98 (Fla. Dist. Ct. App. 1992).

The complaint alleges that "Savencia *intentionally interfered* with the provisions of the Stock Purchase Agreement"; "Savencia Cheese *had knowledge* of the foregoing provisions of the Stock Purchase Agreement"; "Savencia Cheese procured *an intentional and unjustified breach* of the discounted pricing and rights to distribute the Savencia products" ; and "[a]s a direct and proximate result of the above-described wrongful conduct, the buyers have sustained *damages* in an amount to be proven at trial."

But these facts do not inform us of when, how, and why Savencia Cheese executed this intentional breach. True, we apply the less demanding pleading standard to this claim. But even applying this standard, we must omit "conclusory statement[s] of [a] claim" from our analysis. *Twombly*, 550 U.S. at 544. Omitting these conclusions—that Savencia Cheese "had knowledge" and "procured an intentional and unjustified breach"—the complaint fails to state a claim for tortious interference. Because we require "more than . . . a formulaic recitation of the elements" of a tortious interference claim, we consider the complaint's allegations insufficient to satisfy the relevant pleading standards. *Id.* at 555.

## IV.

We **AFFIRM** the district court.

23-12580 JORDAN, J., Concurring in Part and Dissenting in Part    1

JORDAN, Circuit Judge, Concurring in Part and Dissenting in Part:

I agree with and concur in the majority's opinion except for the resolution of the tortious interference claim against Savencia Cheese. In my view, the complaint contained sufficient allegations for this claim to survive a motion to dismiss.

Under Florida law, a tortious interference claim requires the following elements: (1) the existence of a business relationship or contract; (2) knowledge of the relationship or contract on the part of the defendant; (3) an intentional and unjustified interference with the relationship or contract by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship or contract. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1985); *Howard v. Murray*, 184 So. 3d 1155, 1166 (Fla. 1st DCA 2015). I think the complaint adequately alleged these elements in a non-conclusory fashion.

• The plaintiffs alleged that they entered into a stock purchase agreement in December of 2014 with the Bongrain defendants for the purchase of Schratter, and that this agreement included a "commitment by the Bongrain [d]efendants that Schratter would be given discounted pricing on, and the right to distribute, Savencia [Cheese] products for a period of ten years." Am. Compl. ¶¶ 91, 146.

• The plaintiffs alleged that Savencia Cheese knew about these provisions in the stock purchase agreement. *See id.* ¶ 219.

• The plaintiffs alleged that Savencia Cheese, working through Alain Voss, the "inside man" at Schratter, intentionally and

2    JORDAN, J., Concurring in Part and Dissenting in Part 23-12580

unjustifiably interfered with the stock purchase agreement. It did so by "caus[ing] Schratter to revoke and give away substantial pricing discounts and rights through the execution of a distribution agreement between Savencia Cheese and Schratter" in June of 2015 which purported to "change the terms" of the stock purchase agreement without the knowledge or consent of the plaintiffs. *See id.* ¶¶ 15, 36. The distribution agreement in part "allowed Savencia Cheese to (a) overcharge for the foreign cheeses it sold to Schratter; and (b) to cease distributing other foreign cheeses to Schratter." *Id.* ¶ 37.

• The plaintiffs alleged that they were harmed by Savencia Cheese's tortious interference due to the "inflated prices and denial of products, together with the loss of value of Schratter as an ongoing concern." *Id.*

On this record, and accepting all of the plaintiffs' factual allegations as true, there is enough in the complaint to make the claim "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Because a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" *id.* at 556 (citation omitted), I would reverse the dismissal of the tortious interference claim.